In re the Marriage of Mary Ellen
PETERSON, Petitioner,
Appellant,

v.

Larry Lee EISHEN, Respondent.

No. C9–92–1296.

Court of Appeals of Minnesota.

Jan. 26, 1993.

Review Granted March 25, 1993.

Tom Foley, Ramsey County Atty., Brad Johnson, Asst. County Atty., St. Paul, for appellant.

John Trojack, St. Paul, for respondent.

Considered and decided by PARKER, P.J., and PETERSON and FLEMING,* JJ.

## OPINION

PETERSON, Judge.

Mary Peterson appeals from the order granting Larry Eishen's motion to vacate the judgment of paternity and all subsequent child support orders arguing the trial court erred in determining it lacked personal jurisdiction over Eishen. We affirm.

## FACTS

On behalf of appellant, Mary Peterson, Ramsey County initiated a parentage action against respondent, Larry Eishen, on July 20, 1982 by leaving a summons and a complaint at an address in North St. Paul, Minnesota. Although the county attorney's office had sent a certified letter to Eishen at the North St. Paul address in October 1974 that was returned marked "undeliverable," the county served the summons and the complaint at this address because:

1.  driver's license records showed Eishen lived at the North St. Paul address as of January 31, 1975;

2.  Minnesota Department of Revenue records listed the North St. Paul address as Eishen's residence as of March 30, 1981; and

---

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment

3.  an inquiry to the United States Post Office on June 11, 1982 indicated Eishen received mail at the North St. Paul address.

The process server left the summons and complaint for Eishen at the North St. Paul address with an elderly man who refused to identify himself and who threw the papers on the ground. The process server did not personally know either Eishen or the elderly man who, it was later determined, was C.L. Eishen, respondent's grandfather. Two days later, the county attorney's office received a note written on the back of a letter sent with the summons and complaint that said "Larry has not lived here in the last 6 mos. and I don't know where he is. C.L. Eishen."

Eishen never answered the complaint. The trial court entered a default judgment of parentage against Eishen in November 1982. After Eishen failed to respond to requests for financial data sent to the North St. Paul address, the trial court filed an order setting his monthly child support obligation. Eishen never voluntarily paid this obligation, but knew the county took his tax refunds to pay past due child support. In 1986, Eishen called the county attorney's office and asked to take a blood test to determine parentage. In June 1986, the parties took blood tests that established there was a 99.179% probability that Eishen was the child's father.

In October 1991, Eishen filed a motion to vacate the judgment of paternity and all child support orders on grounds that the judgment was void due to lack of personal jurisdiction. Eishen claimed the court lacked personal jurisdiction over him because the summons and complaint had not been served at his usual place of abode. In support of his motion, Eishen submitted an affidavit stating he had not lived at the North St. Paul address since August 1981 when he moved to an address on Bush Street in St. Paul where he lived until approximately April 1983. To substantiate his claim that he did not live in North St.

pursuant to Minn. Const. art. VI, § 2.

Paul on July 20, 1982, Eishen also submitted affidavits from his landlady at the Bush Street residence and a friend who visited him at that address. Peterson submitted an affidavit from the county employee who had investigated Eishen's driver's license, tax, and postal records in July 1982.

The trial court granted Eishen's motion to vacate the judgment of paternity and the child support orders and ordered the county to repay Eishen the child support it had collected from him. In its memorandum, the trial court stated that because Eishen had not been served at his usual place of abode, the court lacked personal jurisdiction over him and the judgment of paternity and all subsequent child support orders were void.

### ISSUE

Did the trial court err in determining it lacked personal jurisdiction over Eishen?

### ANALYSIS

Paternity actions shall proceed and be determined in accordance with chapter 518. Minn.Stat. § 257.66, subd. 3 (1990). Minn. Stat. § 518.145, subd. 2(4) (1990) allows the trial court to vacate a judgment if the judgment is void. Because Minn.Stat. § 518.145, subd. 2 is virtually identical to Minn.R.Civ.P. 60.02, the same standard of review applies to both provisions. *See Maranda v. Maranda*, 449 N.W.2d 158, 164–65 (Minn.1989).

■ Generally, the decision to grant a motion under Minn.R.Civ.P. 60.02 to vacate a default judgment rests within the trial court's discretion. *Hovelson v. U.S. Swim & Fitness, Inc.*, 450 N.W.2d 137, 140 (Minn. App.1990), *pet. for rev. denied* (Minn. Mar. 16, 1990). However, a motion brought under Minn.R.Civ.P. 60.02(d) to vacate a judgment on grounds that it is void due to lack of personal jurisdiction involves no question of discretion. *Hengel v. Hyatt*, 312 Minn. 317, 318, 252 N.W.2d 105, 106 (1977). "If the judgment is void for lack of jurisdic-

tion, it must be set aside without regard to such factors as the existence of a meritorious defense." *Id.*, 252 N.W.2d at 106; *Lange v. Johnson*, 295 Minn. 320, 323–24, 204 N.W.2d 205, 208 (1973)

■ Minn.R.Civ.P. 4.03(a) provides service of a summons within the state may be made on an individual "by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." [1] A person's usual place of abode is "the place where the defendant is actually living at the time when service is made." *Berryhill v. Sepp*, 106 Minn. 458, 459, 119 N.W. 404, 405 (1909). The location of a person's usual place of abode is a question of fact. *Murtha v. Olson*, 221 Minn. 240, 243–44, 21 N.W.2d 607, 610 (1946); *Kueffner v. Gottfried*, 154 Minn. 70, 72, 191 N.W. 271, 272 (1922). Consequently, we will not reverse a trial court's decision regarding a person's usual place of abode on appeal unless it is clearly erroneous. *Murtha*, 221 Minn. at 243–44, 21 N.W.2d at 610; *Kueffner*, 154 Minn. at 72, 191 N.W. at 272.

■ Peterson argues that because Eishen's official records listed an address in North St. Paul as his residence, it was clearly erroneous for the trial court to conclude North St. Paul was not his usual place of abode. We disagree. An address listed in an official record is not necessarily the place where the person is actually living. Eishen submitted affidavits from three people with personal knowledge that he lived on Bush Street in St. Paul on July 20, 1982. The note Eishen's grandfather sent to the county in July 1982 is additional evidence that Eishen did not live at the North St. Paul address at the time of service. Given this evidence, the trial court's conclusion that Eishen was living in St. Paul at the time of service was not clearly erroneous.

■ Peterson also contends the affidavit of service in the record establishes Eishen was served properly. While a sheriff's return or an affidavit of service is usually

---

**1.** Rule 4.03(a) applies to this action. *See* Minn. Stat. § 518.005, subd. 1 (1990) (unless specifically provided otherwise, rules of civil procedure apply to proceedings under this chapter).

strong evidence of proper service, this evidence may be overcome by the production of clear and convincing evidence. *Kueffner,* 154 Minn. at 73, 191 N.W. at 272. Moreover, when the process server has no personal knowledge regarding where the defendant actually is living, the portion of the affidavit of service relating to the defendant's usual place of abode is inconclusive. *Murtha,* 221 Minn. at 246, 21 N.W.2d at 610–11.

Nothing in the record indicates the process server had personal knowledge that Eishen lived at the address in North St. Paul. Therefore, the portion of the affidavit of service related to Eishen's usual place of abode is inconclusive. In addition, the affidavits Eishen submitted from people who had personal knowledge of where he actually lived in July 1982 are direct evidence that overcomes the evidence of proper service established by the affidavit of service.

■ Once the trial court concluded it had no personal jurisdiction over Eishen because he had not been served properly at his usual place of abode, it correctly determined it had no discretion to do anything other than find the judgment void. *See Hengel,* 312 Minn. at 318, 252 N.W.2d at 106. Even if Eishen had actual notice of the lawsuit, personal jurisdiction over him was lacking because the summons and complaint were not served at the place where he was living. *See Thiele v. Stich,* 425 N.W.2d 580, 584 (Minn.1988) (actual notice exception only applies in cases where substitute service was made at defendant's residence).

■ Finally, relying on *Wachsmuth v. Johnson,* 352 N.W.2d 132, 133 (Minn.App. 1984), Peterson claims Eishen submitted to the jurisdiction of the trial court by asking for and taking the blood test to determine paternity. In *Wachsmuth,* this court held that by making a motion to reduce his child support arrearages, a father submitted to the jurisdiction of the trial court, thereby waiving the right to raise the issue of lack of personal jurisdiction. *Id.*

Eishen did not make any motion to the trial court seeking its permission to take the blood test or submit to any court order requiring his participation in these tests. Instead, nearly four years after the judgment of paternity was entered, Eishen merely called the county attorney's office and the parties agreed he could take a blood test. Contacting the county attorney's office once and voluntarily agreeing to perform one act does not subject a person to the trial court's jurisdiction. Accordingly, Eishen did not submit to the jurisdiction of the trial court by asking for or taking the blood test.

## DECISION

Because Eishen was not served at his usual place of abode in St. Paul, the trial court lacked personal jurisdiction over him and the judgment of paternity is void. Eishen did not submit to the jurisdiction of the trial court by voluntarily submitting to a paternity test.

Affirmed.