*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2190**

Arieh Cohen,
Appellant,

vs.

Blake Bjorlin, et al.,
Respondents.

**Filed August 11, 2014
Affirmed
Rodenberg, Judge**

Dakota County District Court
File No. 19WS-CV-13-737

Ryan S. Drea, True & Drea Law, PLLC, Minneapolis, Minnesota (for appellant)

Matthew C. Murphy, Nilan Johnson Lewis, P.A., Minneapolis, Minnesota (for respondents)

        Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and

Reilly, Judge.

UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant challenges the district court's grant of summary judgment to respondents before discovery was complete. We affirm.

## FACTS

On November 18, 2012, appellant Arieh Cohen entered into four separate cellular service contracts with respondent Sprint Solutions, Inc. each with a two-year term. Each contract allowed appellant to purchase a Samsung Galaxy S III for a promotional price of $.96, which he purchased at Sam's Club. Appellant signed forms acknowledging that he had read, understood, and accepted Sprint's Terms and Conditions Statement and Return and Exchange Policy.

Sprint's Return and Exchange Policy provides, in relevant part,

> [Y]ou can try your new product for 14 days. If you aren't 100% satisfied with your product, return your device to your original place of purchase, and contact us within 14 days of activation . . . to deactivate service . . . and Sprint will [r]efund the device . . . purchase price [and] [w]aive the Early Termination Fee . . . . You may have to return any product purchased with the service before your account will be cancelled.

Because the specific models appellant purchased are considered "smartphones," they are subject to a "premium data" add-on charge of $10.00 each month. The charge is not related to network connection.

Appellant purchased the phones expecting to have "4G" service. Appellant was immediately unhappy with the service available in the City of Eagan, where he lives.

Specifically, Sprint had not yet expanded its 4G network to Eagan to cover the devices appellant purchased. Thus the four cellular phones were limited to using a "3G" network for internet access while in Eagan. Appellant attempted to cancel the two-year agreements on all four phones. Appellant alleges, and Sprint does not dispute, that he called Sprint several times attempting to cancel the agreements. Appellant alleges that he was "transferred many times" and was disconnected. Appellant's account was credited with $100 as an "inconvenience credit" and appellant was told by Sprint that 4G services would soon be available. Appellant did not return the phones to the point of purchase.

Appellant sued Sprint, Sprint CEO Daniel Hesse, Sam's Club, Sam's Club employee Fernando Reyes, Phoenix Distributing Inc., and Phoenix employee Blake Bjorlin in conciliation court, alleging that "Sprint would not, and did not allow us to cancel" the contracts. Appellant also alleged that Sprint added "unsolicited calling plans" and failed to provide for "non-partisan arbitration" to resolve the issues. The complaint did not allege that appellant returned or attempted to return any of the four phones.

Appellant claimed damages of $10.00 per month per line, and additional damages, including $9.99 per month for certain months for a third-party subscription for at least one of the devices, and $300.00 for each device (attributed to cancellation costs). Appellant later amended his complaint to add a breach of warranty claim, alleging that one of the devices was defective.

The conciliation court dismissed appellant's complaint, concluding that appellant had failed to establish either a breach of contract or any damages. Appellant removed the case to district court.

Respondents moved the district court for both dismissal and summary judgment. All of the respondents joined in the motion for summary judgment, and respondents Bjorlin, Hesse, Reyes, Sam's Club and Phoenix also sought dismissal on the alternative ground that they were not parties to the service contracts between appellant and Sprint. Appellant responded to respondents' motions and served respondents and respondents' counsel with subpoenas requesting respondents to produce "all contract obligations for 5 telephone lines with signatures and call logs from Sprint . . . to include voice recordings."[1]

The district court heard arguments on the motion for summary judgment on August 28, 2013. Respondents' brief asserts that the district court quashed appellant's subpoenas at the hearing. However, the record on appeal does not include a transcript of the August 28 hearing, and the district court's order does not reference the subpoenas.[2]

The day after the summary-judgment hearing, appellant requested documents and recordings "relevant to [his] complaints filed in Civil Claims Court."[3] On September 24,

---

[1] Appellant signed contracts for four phones and lines and apparently added a fifth line later. The record on appeal contains no contract concerning a fifth line, and the issues in this appeal concern the four phones and lines purchased on November 18, 2012.

[2] Appellant moved this court to accept late-filed transcripts of the August 28 hearing. In a special term order, we determined that appellant had not shown good cause for extending the time prescribed by the rules, and that appellant had not demonstrated that the transcripts were necessary for appellate review. The parties appear to agree that the district court either quashed the subpoenas or at least did not enforce them.

[3] This three-page document appears to be intended as a request for production of documents under Minnesota Rule of Civil Procedure 34, but it is not clear from the record on appeal upon whom this document was served or whether the district court was made aware of it before issuing its order dismissing appellant's claims. In any event, as discussed below, even if the request for documents was properly served and outstanding

4

2013, the district court granted respondents' motion for summary judgment and also granted the motion to dismiss the claims against Bjorlin, Hesse, Fernandez, Sam's Club, and Phoenix. Appellant challenges the district court's grant of respondents' motion for summary judgment, identifying the sole issue on appeal as being whether the district court erred in summarily adjudicating his claims before discovery was complete.

## DECISION

Appellant does not argue on appeal that the record as constituted contains unresolved questions of material fact sufficient to survive summary judgment. Rather, appellant argues that the district court erred in granting respondents' motion for summary judgment because discovery was not yet complete, which, he argues, "creates a genuine issue of material fact." Respondents assert that appellant did not comply with the requirements of Minnesota Rule of Civil Procedure 56 in requesting a continuance to conduct additional discovery and thus, summary judgment was appropriately granted.

A party may serve and file a motion for summary judgment "at any time after the expiration of 20 days from the service of the summons." Minn. R. Civ. P. 56.01. A party opposing a summary judgment motion may move for a continuance of the motion "to permit affidavits to be obtained or depositions to be taken or discovery to be had." Minn. R. Civ. P. 56.06. To request a continuance or denial of a summary judgment motion based on the need for additional discovery, the nonmoving party is required by rule to file an affidavit that is "specific about the evidence expected, the source of discovery

at the time of the district court's order, summary judgment was nevertheless properly granted.

5

necessary to obtain the evidence, and the reasons for the failure to complete discovery to date." *Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 919 (Minn. App. 2003). "[A] failure to submit such an affidavit, by itself, justifies the district court's decision to rule on the motion without granting relief under rule 56.06." *Molde v. CitiMortgage, Inc.*, 781 N.W.2d 36, 45 (Minn. App. 2010). A district court "has wide discretion to issue discovery orders," and normally an order will not be overturned without clear abuse of that discretion. *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007).

We first observe that the scheduling order set the discovery deadline after the deadline for filing dispositive motions. This seems unusual. But respondents complied with the scheduling order by serving and filing their motion for summary judgment before the deadline for dispositive motions. And nothing in rule 56 precludes a dispositive motion before the close of discovery. The rule prohibits a motion made before "the expiration of 20 days from the service of the summons."

Rule 56.06 allows a nonmoving party to request a continuance of a summary judgment motion to complete discovery. But appellant made no such request. He submitted no affidavit as required by rule 56.06. And because appellant failed to timely request the transcript for the summary judgment hearing, we cannot determine whether he made an oral request for a continuance to complete discovery. Appellant has the burden of establishing his claim on appeal. *See Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn. App. 1995). On this record, we cannot assume that a request for

6

continuance was made. And even if appellant requested a continuance, he failed to supply an affidavit supporting such a request.

Appellant cites *U.S. Bank Nat'l Ass'n v. Angeion Corp.*, 615 N.W.2d 425 (Minn. App. 2000), *review denied* (Minn. Oct. 25, 2000) to support his assertion that the district court's grant of summary judgment was premature. In *Angeion*, although the appellant did not move for a continuance, we nonetheless reversed the grant of summary judgment. 615 N.W.2d at 433-34. But *Angeion* is distinguishable.

The substantive issue in *Angeion* was whether respondent had "transferred all or substantially all of its assets," *id.* at 434, which led to a "default[] on its obligation to make a repurchase offer to noteholders." *Id.* at 427. The respondent moved for summary judgment, and the appellant filed a cross-motion for summary judgment and served interrogatories on the respondent. *Id.* at 429. The respondent refused to answer the interrogatories. *Id.* The district court granted the respondent's motion for summary judgment and concluded that "further discovery would be expensive and unnecessary." *Id.* In reversing the grant of summary judgment, we concluded that summary judgment was "premature" because "the record [was] not sufficiently developed." *Id.* at 433. We reasoned that "[a]ll of the information [the appellant] needed to demonstrate a material issue of fact . . . was within [the respondent's] possession" and that the respondent had "refused to answer further discovery while the motions were pending." *Id.* at 434.

Here, and unlike in *Angeion*, appellant made discovery requests *after* the summary judgment hearing. Respondents did not fail or refuse to respond to any discovery requests properly served before the dispositive motion hearing. In the absence of a

7

request for continuance in compliance with rule 56, the district court acted within its discretion in deciding the timely dispositive motions on the merits.

We also observe that, even had appellant properly requested a continuance to complete discovery, summary judgment would nevertheless appear to have been proper. "[I]f the discovery would not assist the district court or change the result of the summary judgment motion, the district court does not abuse its discretion by granting the summary judgment motion without granting the continuance." *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 400 (Minn. App. 2010).

Appellant argues that he requested "recordings and other documentation from Sprint customer service of each telephone call appellant made to the company" and that the documents "will demonstrate that respondent's employees blatantly and explicitly engage[d] in evasive tactics to prevent appellant from exercising the cancellation option of the contract." Even if true, this allegation does not raise any genuine issue of material fact in the context of the parties' contracts. The district court found that "it is undisputed that [appellant] intended to cancel the contract during [the two-week return period] and had repeated contacts with Sprint." It also stated that "Sprint does not specifically rebut the assertion that it transferred [appellant's] call several times when he attempted to cancel, nor does it dispute the suggestion that its employees were reluctant to cancel the contract." The district court concluded that there is no authority to suggest that "attempts by one party to make it difficult for the other to cancel a contract are relevant in a breach of contract action." The district court based its grant of summary judgment on, among other things, the absence of any record evidence, or even any claim, that appellant

returned the phones to the point of purchase. This was required by the contracts for cancellation.

In sum, we hold that the district court acted within its discretion in ruling on respondents' dispositive motion before the discovery deadline had expired. Because appellant did not allege that he returned the phones to the point of purchase, and because appellant failed to demonstrate on appeal that he requested a continuance of the dispositive motion to complete discovery, summary judgment was properly granted.

**Affirmed.**